**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RICHARD STERNBERG,

                       **Plaintiff,**

     -against-

THE PAUL REVERE LIFE INS. CO.,

                   **Defendants.**

**1:17-cv-8523 (ALC)**

**<u>OPINION & ORDER</u>**

**ANDREW L. CARTER, JR., United States District Judge:**

     The issue in this case is whether an orthopedic surgeon was "totally disabled" for purposes of his disability insurance policy. Plaintiff Dr. Richard Sternberg ("Sternberg") brings breach of contract claims against Defendant The Paul Revere Insurance Company ("Paul Revere"), alleging that he is entitled to disability payments as the result of an injury. Plaintiff filed a motion for summary judgment seeking damages and declaratory relief that he was "totally disabled" for purposes of the policy. Defendant filed a motion for summary judgment seeking declaratory relief that it properly denied Plaintiff's claim for total disability. The Court finds that, for the reasons set forth below, Plaintiff was not "totally disabled" for purposes of the insurance policy, and according, that Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**.

## BACKGROUND

     The following factual summary consists of only undisputed material facts ("UMF"), unless otherwise indicated. These facts are, in significant part, copied from the parties' Rule 56.1 Statements.[1] Where the facts are subject to legitimate dispute, they are construed in favor of the non-moving party. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

---

[1] Statements are presumed to incorporate counterparty responses as well as the documents and deposition testimony cited therein. Unless otherwise indicated, a standalone citation to a Rule 56.1 Statement ("Undisputed Material Facts"

Plaintiff is a physician who purchased three disability insurance policies from Defendant. UMF ¶1. Policy 0102298485 was issued effective August 18, 1987 ("1987 Policy"), Policy 0102358689 was issued effective January 18, 1989 ("1989 Policy"), and Policy 01025172030 was issued effective September 18, 1991 ("1991 Policy") (collectively, "Policies"). *Id.* at ¶2.

The Policies provided benefits for total and residual disability due to sickness or injury. *Id.* at ¶3. In relevant part, the Policies included the following definitions:

**"Your Occupation"** means the occupation in which You are regularly engaged at the time You become Disabled.[2]

**"Total Disability"** means that because of Injury or Sickness:
    a. You are unable to perform the important duties of Your Occupation; and
    b. You are under the regular and personal care of a Physician.[3]

**"Residual Disability"** prior to the Commencement Date, means that due to Injury or Sickness:
    a. (1) You are unable to perform one or more of the important duties of Your Occupation; or
      (2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them; and
    b. Your loss of Earnings is equal to at least 20% of Your Prior Earnings while You are engaged in Your Occupation or another occupation; and
    c. You are under the regular and personal care of a Physician.[4]

---

or "UMF") represents that this Court has overruled any objections and deemed the underlying factual allegation undisputed.

[2] The 1991 Policy differs slightly and provides that: "means the occupation or occupations in which You are regularly engaged at the time Disability begins."

[3] The 1991 Policy differs slightly and provides that: "b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You."

[4] The 1991 Policy differs slightly and provides that:
    "Residual Disability," prior to the Commencement Date, means that due to injury or Sickness which begins prior to age 65:
        . . .
      b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You; and
      c. You are not Totally Disabled.

The Policies also include a Lifetime Total Disability Benefit Rider, under which benefits are paid monthly if: (1) the Total Disability begins before age 65; (2) the Total Disability continues to age 65; and (3) The benefits under the Policy are during the Total Disability. If these three conditions are met, then on the insured 65th birthday (or the date the Total Disability benefits payable under the policy end), Paul Revere pays a monthly amount based on a Policy schedule. The amount in the Policy schedule (plus any Cost of Living increase) is multiplied by a factor that varies based on the age at which the disability commenced.[5]

Sternberg was an orthopedic surgeon who was employed by Bassett Healthcare in Cooperstown, New York. *Id.* at ¶5. His primary responsibilities included working in the hospital owned clinic 5 half days per week, performing open surgical procedures (i.e., those involving an incision), taking call via the emergency room, and inpatient responsibilities with surgical involvement. *Id.* at ¶6. Due to a detached retina and the resultant intraocular bleed, and then due to complications from spinal decompression surgery, Sternberg took leave from his employment starting April 6, 2012. *Id.* at ¶53. He returned to work on a part-time basis on July 3, 2012 and on a full-time basis on July 16, 2012. *Id.* at ¶54. However, when he returned, Sternberg was no longer able to take call in the emergency room or perform open surgical procedures in the operating room. *Id.* at ¶¶ 11, 54. Instead, Sternberg expanded his clinical hours from 5 half days per week to 9 half days per week as of July 16, 2012. *Id.* at 12. Sternberg was also unable to treat patients surgically but instead had to refer them to an orthopedic surgeon at Basset Medical Center. *Id.* at 15. Aside from open surgical procedures and emergency room duties, Sternberg worked in the same building

---

[5] Factors by age for Total Disability due to Sickness: 1.0 for 55 or less; 0.9 for 56; 0.8 for 57; 0.7 for 58; 0.6 for 59; 0.5 for 60; 0.4 for 61; 0.3 for 62; 0.2 for 63; 0.1 for 61. *Id.* at ¶4.

as he did before his disability, he saw the same type of patients, and performed the same non-operative orthopedic therapies in his clinic. *Id.* at 16. Sternberg's annual salary before April 6, 2012 was $425,000, but after he returned from his injury, his salary was reduced to $325,000. *Id.* at 13.

From January 11, 2013 until April 15, 2013, Sternberg again took leave from his employment because of spinal decompression surgery. When he returned to work for the second time, he was still unable to take call in the emergency room or perform open surgical procedures in the operating room. *Id.* at 16. However, he continued with his increased clinical schedule and continued to perform non-operative orthopedic therapies in his clinic. This continued from April 15, 2013 until March 23, 2015, after which he was rendered completely disabled. *Id.* at 20.

The parties agree that during the periods from April 6, 2012 until July 3, 2012; from January 11, 2013 until April 15, 2013; and from March 23, 2015 onwards, Sternberg was completely disabled and unable to perform any functions of his occupation. *Id.* at ¶¶ 20, 60. Thus, the operative question is whether Sternberg was "Totally Disabled" during the periods he worked between his leaves of absence (i.e., from July 3, 2012 until January 11, 2013; and from April 15, 2013 until March 23, 2015) (hereinafter, "Interim Periods").

Paul Revere analyzed Sternberg's billing information for these Interim Periods and advised Sternberg on July 8, 2014 that "[t]he billing data provided shows that Sternberg has continued to perform some surgical procedures consistent with that of an Orthopedic Surgeon on a limited basis since the onset of his claim." *Id.* at ¶29. Accordingly, Paul Revere noted, Sternberg was entitled to Residual Disability insurance rather than Total Disability insurance for the Interim Periods. *Id.* at ¶30. If Paul Revere is correct, since Sternberg was 61-years-old on March 23, 2015, he is entitled

4

to a factor of 0.4 under the Lifetime Total Disability Benefit Rider. *Id.* at ¶33. If, however, Sternberg's total disability began three years earlier, he is entitled to a factor of 0.7 under the Lifetime Total Disability Benefit Rider. *Id.* Additionally, Paul Revere's decision may have reduced the benefits Sternberg received after Paul Revere made the determination in July 2014.

Sternberg filed a complaint on November 3, 2017 alleging breach of contract and requesting declaratory relief. ECF No. 1. Specifically, he asked for damages and a declaratory judgment that he had been continuously totally disabled as defined in the Policies from March 31, 2012 through the present. *Id.* at 7. Paul Revere answered on January 5, 2018. ECF No. 11. After completing discovery, the parties filed cross-motions for summary judgment on March 21, 2019. ECF Nos. 45, 46. Plaintiff seeks damages and a declaratory judgment. Defendant seeks declaratory relief that it properly denied Plaintiff's claim for total disability. The parties filed opposition briefs on April 9, 2019. ECF Nos. 53, 54. Finally, the parties filed responsive briefs on April 15, 2019 and April 16, 2019. ECF Nos. 55, 56.

## LEGAL STANDARD

### I.  Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact and "the moving party is entitled to a judgment as a matter of law." *Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(a). Material facts are facts that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. An issue of fact is "genuine" when a reasonable fact finder can render a verdict in the nonmoving party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation marks omitted). "[T]he court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

"If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, No. 14-CV-7354, 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016) (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[W]hen both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it. When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc.*, 996 F.2d at 1461 (citation omitted). Instead, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* at 1461 (citation omitted).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Marvel Characters v. Simon*, 310 F.3d 280, 285–86 (2d Cir. 2002)). If the moving party meets its burden, the burden shifts to the non-moving party to bring forward "specific facts showing a genuine issue for trial." *Gen. Ins. Co.*, 2016 WL 4120635, at *4 (citation omitted); *see also* Fed. R. Civ. P. 56(c). The non-moving party "may not rest upon mere allegation[s] or denials of his pleadings,"

*Anderson*, 477 U.S. at 259. Rather, the non-moving party must "designate specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and these facts must be "admissible in evidence." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (quoting Fed. R. Civ. P. 56(e)). "The mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment," *Anderson*, 477 U.S. at 247 (emphasis in original), and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 50 (internal citations omitted).

## II. **Breach of Insurance Contract**

A breach of contract claim must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Applying New York law, when interpreting an insurance contract, courts look to whether the plain meaning of the terms in the contract are "ambiguous." "[U]nambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Universal Am. Corp.*, 25 N.Y.3d at 680 (citation omitted). "[A]mbiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (internal citations omitted). "If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence and it may then award summary

judgment." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (citations and quotation marks omitted).

Under New York law, "a claimant is 'totally disabled' when he or she is no longer able to perform the 'material' and 'substantial' responsibilities of his or her job." *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 124 (2d Cir. 2000); *see also Hershman v. Unumprovident Corp.*, 660 F. Supp. 2d 527, 531 (S.D.N.Y. 2009) ("The policy defines 'total disability' as the inability 'to perform the important duties of [the insured's] Occupation.' Courts applying New York law on summary judgment have construed substantially similar language to mean that an insured is totally disabled if 'he or she is no longer able to perform the material and substantial responsibilities of his or her job.'") (citation and quotation marks omitted). The insured bears the burden of proving that he or she is totally disabled within the meaning of the insurance policies. *Shapiro*, 212 F.3d at 124. The inquiry into whether a claimant is totally disabled entails "a fact-oriented, functional approach that look[s] to the professional activities in which the insured was regularly engaged at the time of the onset of the insured's disability." *Id.* (citations and quotation marks omitted). Thus, the operative question is whether the insured's work is of the "same general character" as prior to his disability, or whether he is performing "fundamentally different job duties after the onset of the disability." *London v. Berkshire Life Ins. Co.*, 71 F. App'x 881, 884 (2d Cir. 2003).

## DISCUSSION

This case presents a single issue: whether Plaintiff's disability renders him "totally disabled" for the Interim Periods, when he was still able to perform some of the important duties of his occupation but was unable to perform open surgery or take call in the emergency room. Under the Policies, total disability includes two components. First, the insured must be "unable to

8

perform the important duties of Your Occupation;" and second, the insured must be "under the regular and personal care of a Physician."[6] The parties agree that the second condition is met. The only question is whether Sternberg was unable to perform "the important duties" of his occupation after his disability commenced. Sternberg bears the burden of proving that he was "totally disabled" within the meaning of the Policies. *See Brumer v. Paul Revere Life Ins. Co.*, 133 F.3d 906 (2d Cir. 1998).

Paul Revere argues that "total disability" means a claimant is unable to perform *any* or *all* the important duties of his occupation; whereas residual disability means a claimant is unable to perform *one or more* of the important duties of his occupation. *See* Defendant's Memorandum of Law in Support of Motion for Summary Judgment, (ECF No. 45) at 15 ("Def. Memo"). The Court, however, does not adopt this construction. Instead, the plain language of the Policies and the law of New York provide that claimants are able to perform the "important duties" of their occupation if they can perform duties of a "position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties." *Brumer v. Paul Revere Life Ins. Co.*, 133 F.3d 906 (2d Cir. 1998) (citation and quotation marks omitted); *see also London*, 71 F. App'x 881 at 884. The Court need not—and indeed, cannot—artificially insert the term "all" into the language of the Policies. *See Universal Am. Corp.*, 25 N.Y.3d at 680 ("[U]nambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court.") (citation omitted). Instead, the court applies a functional approach that looks at the professional activities that occurred before

---

[6] As noted in footnote three, the 1991 Policy differs slightly and provides that: "b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You."

9

and after the onset of the disability.[7] Moreover, since the Court holds that Sternberg was not totally disabled even under this less strict construction of total disability, he would certainly not be totally disabled under the more stringent definition offered by Defendants.

In *Hershman*, an invasive cardiologist brought a claim against Paul Revere under a nearly identical policy, also alleging that he qualified for "total disability." *Hershman*, 660 F. Supp. 2d 527, 528 (S.D.N.Y. 2009). Because of his disability, Dr. Hershman was unable to perform invasive cardiac procedures, but continued to practice as a "consultative" cardiologist. Before his disability, Hershman spent approximately half of his time on consultations and the other half performing invasive procedures in the hospital and on call. *Id.* at 530. The court held that Hershman was not totally disabled. As the court noted, there was "far too much continuity between his work before and after the onset of his back condition" because he "works for the same office, sees many of the same patients, supervises the same multi-million dollar laboratory business, and earns roughly the same income." *Id.* at 532. Similarly, in *London v. Berkshire Life Ins. Co.*, the Second Circuit held that a cardiologist who could no longer perform bypass surgery and who alleged that he had become a mere "consultant" was not totally disabled, because "it is uncontested that he continued to see and treat his own patients in his capacity as a cardiologist, using 'similar skills and training'

---

[7] Defendants argue that this approach renders the "residually disabled" coverage superfluous. *See, e.g.*, *Simon v. Unum Grp.*, No 7-CV-11426, 2009 WL 857635 at *5 (S.D.N.Y. Mar. 30, 2009) ("If the residual disability provision is to be given meaning, an insured can only be 'totally disabled' if he can no longer perform any of the 'substantial and material duties' of his occupation. An inability to perform one or more of those duties would only render an insured residually disabled."); *Parker v. Paul Revere Life Ins. Co.*, No. 97-CV-4339, at *3 (E.D.N.Y. Dec. 20, 2000) ("The policy provides clearly and unambiguously, however, that an insured who is unable to perform some of the important duties of his occupation is residually disabled . . . . Thus, total disability can only mean the inability to perform all of the important duties of one's occupation."). This Court disagrees. Instead, it adopts the reasoning of the court in *Hershman*: "Both contract terms retain meaning under the established test: an insured is 'totally disabled' only where incompetent to perform work of the 'same general character,' and is 'residually disabled' by an inability to perform a particular duty or duties that does not carry this consequence." 660 F. Supp. 2d at 532. This interpretation provides meaning to both types of disability insurance while also hewing to the well-established test in New York for total disability.

10

as he used before the illness. Thus the nature of work was materially the same." 71 F. App'x at 884. This was in part because he continued "to see and treat his own patients-the primary component of his pre-disability practice." *Id.*

Here, while Sternberg was forced to adjust his work schedule and responsibilities, the general character of his work remained the same. He worked at the same hospital, with the same patients, and in the same clinics as he did before his disability. While he was unable to perform open surgical procedures, even before his disability, less than half of Sternberg's charges were "inextricably tied to open surgical procedures." *See* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment (ECF No. 46) at 11 ("Pl. Memo.") ("Paul Revere's own in-house review of the pertinent records revealed that pre-disability almost half of STERBERG's charges were inextricably tied to open surgical procedures."). Plaintiff argues that surgery is so integral to Sternberg's practice that "one cannot imagine the subject meaningfully persisting in the occupation dispossessed of it." Pl. Memo at 12. Yet, Sternberg spent more than half of his pre-disability time in clinics as a non-operating physician. *Brumer*, 133 F.3d 906 (2d Cir. 1998) ("Brumer emphasizes that surgical aspects of his profession, and labors to characterize a podiatrist's work as purely scalpel-oriented. Nonetheless, it is clear that surgery was not the only professional activity to which he devoted time prior to his suspension."); *see also Simon*, 2009 WL 857635 at *5 (S.D.N.Y. Mar. 30, 2009) ("It is also undisputed that while Simon is no longer able to perform surgeries or deliver babies, he can still perform gynecological examinations and procedures, which are 'substantial and material' duties of his occupation as an OB/GYN."). Had Sternberg's practice as an orthopedic surgeon centered exclusively around surgery, this may be a different case. *Hershman*, 660 F. Supp. 2d at 532 (S.D.N.Y. 2009) ("The significance of an occupation policy to

a physician practicing *exclusively* as a surgeon, for example, is to insure her continued ability to conduct surgery.") (emphasis added).

Moreover, while Sternberg increased his clinical days from 5 half days per week to 9 half days, performing clinical duties was a significant and essential part of his occupation before his disability. As the *Hershman* court noted, "if a physician routinely performs surgeries but also devotes substantial time to a non-surgical practice, he is not totally disabled by an inability to operate." *Id.* at 532. Although Sternberg added more clinical time to compensate for his inability to perform open surgery, his work was of the same general character, required similar skills and training, and involved comparable duties—namely, he saw the same patients, in the same facility and clinics, and continued to perform non-operative orthopedic therapies.[8]

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgement is **DENIED** and Defendants' motion for summary is **GRANTED**.


**SO ORDERED.**

**Dated: January 3, 2020**
**New York, New York**

ANDREW L. CARTER, JR.
United States District Judge

---

[8] Sternberg's annual salary was indeed reduced from $425,000 to $325,000 (i.e., by nearly 24%). While a significant reduction in salary can indicate that a post-disability occupation is not of the same general character as the pre-disability occupation, Sternberg's reduction alone does not demonstrate that he changed his occupation. *See Hershman*, 660 F. Supp. 2d. 527, 534 n.4 (S.D.N.Y. 2009) ("[T]rends in net income are relevant to the question of whether the insured's disability actually caused a change in occupations.") (citing *Shapiro*, 212 F.3d at 125). In fact, in this case, this reduction in salary, although significant, is exactly the type of decrease that may be covered by the "residual disability" insurance in the Policies, which requires at least a 20% reduction in prior earnings.